1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

11

INFOGROUP, INC., et al.,

Plaintiffs,

v.

WILLIAM SPAN, MICHAEL GUNTER,
and LEADPRODUCERS LLC,

Defendants.

C14-63 TSZ

ORDER AND
PRELIMINARY INJUNCTION

12    THIS MATTER comes before the Court on plaintiffs' motion for preliminary

13 injunction and writ of attachment, docket no. 5.  Having reviewed all papers filed in

14 support of and in opposition to the motion, the Court enters the following order.

15 **Background**

16    Plaintiffs Infogroup, Inc., infoUSA, Inc., and infoUSA Marketing, Inc. are in the

17 business of data aggregation, compiling information on companies, executives, and

18 consumers, and then marketing and selling it to others via the websites "infoUSA.com"

19 and "salesgenie.com."  Plaintiffs have collected data on approximately 17 million North

20 American businesses, 12 million executives, and 210 million consumers.  Complaint at

21 ¶ 10 (docket no. 1).  Plaintiffs offer information for sale at the average rate of $150 for

22 the first 500 records and 10¢ per record thereafter.  Khanna Decl. at ¶ 6 (docket no. 8).

23

With regard to businesses, plaintiffs use six-digit codes, which are based on the United

States government's four-digit Standard Industrial Classification system, to aid their

customers in filtering and identifying useful data.  _Id._ at ¶ 2.  Plaintiffs allegedly have a

registered copyright in this six-digit taxonomy.  Complaint at ¶ 23 & Exs. A-D.

Defendant LeadProducers LLC is a Washington limited liability company that has

been inactive since March 1, 2011.  _See_ http://www.sos.wa.gov/corps/search_detail.aspx?

ubi=602968609.  Defendant William Span is a member of, and the registered agent for,

LeadProducers LLC.  _Id._  In October 2013, Stacy Skradski, a program manager for

Infogroup, Inc., saw the website "secretsalesformula.com," which directed visitors to

contact Mike Gunter.  Skradski Decl. at ¶¶ 2-3 (docket no. 9).  Plaintiffs have pleaded, on

information and belief, that Gunter resides in North Carolina and is a sales manager for

LeadProducers LLC.  Complaint at ¶ 3.  The secretsalesformula.com website is currently

defunct, but plaintiffs have provided the following screen capture dated January 6, 2014:



Ex. A to Skradski Decl.

After viewing the secretsalesformula.com website, Skradski posed as a potential buyer, using the alias Julie Sanders, and sent an email to Gunter, inquiring about data on United States businesses.  Ex. B to Skradski Decl.  Skradski used as a ruse that she was "working with a developer to build a mobile application" and was "going to need some data to populate the app."  _Id._  She stated that "as this is my first round trying to purchase something like data, I'm not sure what the best option is."  _Id._  According to Skradski, she spoke with Gunter on the telephone and, during their conversation, Gunter "admitted Defendants are selling 'InfoUSA's database.'"  Skradski Decl. at ¶ 4.  Gunter later sent the following e-mail:

**INFOUSA business data base**

http://www.youtube.com/watch?v=3OOxTXoInlQ

Bill Span info:

www.costnet.com

Ex. C to Skradski Decl.  The first link in Gunter's message is for an infoUSA YouTube video titled "Data Quality."  The second link is for a website that currently contains an elaborate resume for William ("Bill") Span, with a number of videos and a chronological summary of his career.  The costnet.com website does not now appear to make any reference to Infogroup or infoUSA or to offer any databases for sale, and plaintiffs have offered no evidence to suggest that the website was substantially different in October 2013.

In a subsequent telephone conversation with Gunter, Skradski negotiated to purchase two United States business databases for $1,000.  Skradski Decl. at ¶ 4.  An

ORDER AND PRELIMINARY INJUNCTION - 3

1    invoice was sent by Lead Producers, LLC to the PayPal account of Meredith Jannazzo,

2    another Infogroup employee who Skradski represented to Gunter was the aunt of her alias

3    Julie Sanders.  Exs. D & E to Skradski Decl.  After payment was made via PayPal, six

4    electronic files were sent to Skradski from Bill Span's Yahoo! account.  *See* Exs. G, J,

5    and K to Skradski Decl.  Four of these six documents had filenames that began with

6    "INFOUSA," followed by a common set of numbers, "4-2013," which appear to be a

7    date, and ended with a unique identifier ranging from 1 to 4.  Ex. J to Skradski Decl.  The

8    naming convention suggests that these four documents were subparts of one database; the

9    other purchased database was apparently contained in the file "Iqs Bizz master.txt."

10         Bernie Galing, Director of Database Analytics for Infogroup, Inc., examined one

11   of the purchased databases, presumably the one delivered in four subparts.  *See* Galing

12   Decl. at ¶ 3 (docket no. 7).  According to Galing, the purchased database that he analyzed

13   contained 15.2 million records.  *Id.*  Galing found embedded in the purchased database all

14   26 fictitious listings, called "seed data," that plaintiffs routinely implant in their database

15   to assist in detecting whether a particular database is copied or derived from their

16   database.  *Id.*  Galing also discovered that the purchased database contained plaintiffs'

17   six-digit codes, with the only change being the addition of a hyphen between the first four

18   and the last two numbers (*i.e.*, in the format 1234-56, rather than 123456).  *Id.*  In

19   addition, Galing observed that the purchased database had the same abbreviations and

20   misspellings as plaintiffs' database too frequently to be a coincidence.  *Id.*

21         Plaintiffs assert that defendants were not authorized to market and sell plaintiffs'

22   database.  In their Complaint, plaintiffs allege the following causes of action:  (i) false

23

ORDER AND PRELIMINARY INJUNCTION - 4

1  designation of origin and unfair competition in violation of the Lanham Act; (ii) false

2  advertising in violation of the Lanham Act; (iii) trademark infringement; (iv) copyright

3  infringement; (v) violation of the Computer Fraud and Abuse Act; (vi) violation of

4  Washington's Uniform Trade Secrets Act; (vii) violation of Washington's Consumer

5  Protection Act ("CPA"); (viii) conversion; (ix) trespass to chattels; and (x) unjust

6  enrichment.  Complaint at ¶¶ 39-108.  Plaintiffs seek a preliminary injunction to prevent

7  defendants from "accessing, marketing, and selling" plaintiffs' business database, and

8  from operating the websites secretsalesformula.com, costnet.com, leadproducers.net, and

9  supremesalesmaster.com "**if** they are marketing and selling" plaintiffs' database through

10  such sites.[1]  Mtn. at 24 (docket no. 5); Prop. Ord. at 10 (docket no. 5-1) (emphasis

11  added).  Plaintiffs also request a writ of attachment against Span, who has a residence in

12  Kirkland, Washington.

13  **Discussion**

14  **A.    Preliminary Injunction**

15       A preliminary injunction "is an extraordinary remedy never awarded as of right."

16  _Winter v. Natural Res. Defense Council_, 555 U.S. 7, 24 (2008).  To obtain a preliminary

17  injunction, plaintiffs must demonstrate that (i) they are likely to succeed on the merits,

18  (ii) they are likely to suffer irreparable harm in the absence of preliminary relief, (iii) the

19  

20  [1] As indicated earlier, the website secretsalesformula.com is defunct and the website costnet.com merely
   houses Span's resume.  The website leadproducers.net currently contains only a logo for LeadProducers

21  LLC, including the statement "in front of important technologies of our time," and Span's telephone
   number and e-mail address.  The website supremesalesmaster.com appears to have the same substance as

22  the website costnet.com.  Plaintiffs have offered no evidence that any of these websites currently refer to
   plaintiffs' database or offer it for sale.

23

balance of equities tips in their favor, and (iv) an injunction is in the public interest.[2] *Id.*

at 20.  With regard to their claim of unjust enrichment, the Court concludes that plaintiffs

have made the requisite showing.

Unjust enrichment is a "method of recovery for the value of the benefit retained

absent any contractual relationship because notions of fairness and justice require it."

*Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).  To establish a claim of

unjust enrichment, plaintiffs must prove that (i) defendants received a benefit, (ii) the

received benefit was at plaintiffs' expense, and (iii) the circumstances render unjust

defendants' retention of such benefit without payment.  *Id.* at 484-85.  In this case,

defendants received $1,000 from plaintiffs in exchange for the sale to plaintiffs of *inter*

*alia* their own database, which plaintiffs have expended substantial resources to create.

Plaintiffs are likely to succeed on the merits of their claim that defendants' retention of

such funds would constitute unjust enrichment.

Moreover, plaintiffs have made the requisite showing of irreparable harm in the

absence of a preliminary injunction.  If defendants are permitted to sell additional copies

---

[2] Although a panel of the Ninth Circuit has articulated an alternative standard for a preliminary injunction, which requires a lesser showing, *i.e.*, merely "serious questions" going to the merits, provided that the balance of hardships tips "sharply" in favor of the movant, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), this sliding-scale test has been questioned as running contrary to *Winter* and the decisions of earlier panels of the Ninth Circuit, namely *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009), and *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  *See Sec. & Exch. Comm'n v. Banc de Binary Ltd.*, 964 F. Supp. 2d 1229, 1232-33 (D. Nev. 2013); *Fox Television Stations, Inc. v. BarryDriller Content Sys., PLC*, 915 F. Supp. 2d 1138, 1141 n.6 (C.D. Cal. 2012); *see also Campbell v. Feld Entm't Inc.*, 2013 WL 4510629 at *4 (N.D. Cal. Aug. 22, 2013). Given the posture of the pending motion for preliminary injunction, the Court need not address whether the sliding-scale standard articulated in *Cottrell* applies.  *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (declining to use the "serious questions" approach because a likelihood of success on the merits had been shown).

1   of plaintiffs' database, the value of plaintiffs' database might be irreversibly impaired.

2   Thus, the balance of hardships tips in plaintiffs' favor.  Defendants have not articulated

3   any prejudice they might suffer from entry of a preliminary injunction; they do not appear

4   to be engaged in the business of aggregating data, and enjoining them from "accessing,

5   marketing, and selling" plaintiffs' database is unlikely to have a significantly negative

6   impact on them.[3]

7          Finally, the public interest would be served by preventing defendants, while this

8   lawsuit is pending, from disseminating plaintiffs' database to others not in privity with

9   plaintiffs, who might then further circulate the database or assert a right to do so,

10  potentially resulting, unnecessarily, in yet more litigation.  Having determined that the

11  requirements for a preliminary injunction are satisfied with regard to plaintiffs' unjust

12  enrichment claim, the Court declines to examine the likelihood of success on the merits

13  as to plaintiffs' other claims.[4]  The Court will enter a preliminary injunction, but it will

14  not be as broadly worded as the one proposed by plaintiffs.

15  _____

16  [3] Indeed, in his declaration, Span describes the events at issue as an "isolated" incident, indicating that
    plaintiffs' database might have been acquired from a third party and then resold. Span Decl. at ¶ 4
17  (docket no. 25).  Span denies engaging in any "direct attack" or theft of plaintiffs' database, *id.* at ¶¶ 2 &
    4, and he denies that either he or Gunter acted in an individual capacity in selling plaintiffs' database, *id.*
18  at ¶¶ 2, 3, & 5.  Rather, Span asserts that he and Gunter conducted all business under the auspices of
    LeadProducers LLC.  *Id.*  Defendants therefore do not oppose a preliminary injunction, but wish to
19  reserve the ability to interpose the corporate form as a defense to individual liability.  The Court makes no
    ruling regarding whether Span and Gunter may be held personally liable with respect to plaintiffs' various
    claims.

20  [4] Plaintiffs failed to provide a copy of the deposits submitted to the Copyright Office in connection with
    the registrations attached as exhibits to the Complaint.  Having received no evidence of the content of the
21  allegedly copyrighted material, the Court could not assess the merits of plaintiffs' copyright infringement
    claim.  *See Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986) ("There can be no proof of
22  'substantial similarity' and thus of copyright infringement unless Seiler's works are juxtaposed with
    Lucas's and their contents compared."); *see also Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d

23

1

**B.**   <u>**Writ of Attachment**</u>

2

Washington law governs with respect to remedies for seizing property to secure

3

the satisfaction of a potential judgment.  Fed. R. Civ. P. 64(a).  Under Washington law, a

4

writ of attachment may be issued on one or more of the following statutorily enumerated

5

grounds:  (1) the defendant is a foreign corporation; (2) the defendant is not a resident of

6

this state; (3) the defendant conceals himself or herself to avoid service of process; (4) the

7

defendant absconds to avoid service of process; (5) the defendant removes or is about to

8

remove property from the state with the intent to delay or defraud creditors; (6) the

9

defendant assigns, secrets, or disposes of property with intent to delay or defraud

10

creditors or is about to do so; (7) the defendant is about to convert property into money

11

for the purpose of placing it beyond the reach of creditors; (8) the defendant is guilty of

12

fraud in connection with the obligation for which the action is brought; (9) the injury

13

underlying the action arose from the commission of a felony, gross misdemeanor, or

14

misdemeanor; or (10) the action is brought to recover on a contract.  RCW 6.25.030.

15

With respect to their request for a writ of attachment, plaintiffs have the burden of

16

establishing "the probable validity of the claim sued on" and "probable cause to believe

17

that the alleged ground for attachment exists."  RCW 6.25.070(1).

18

---

19

197, 206-08 (9th Cir. 1989) (for purposes of a copyright infringement claim, the content to be compared

20

consists only of the protectable expressions).  Moreover, the Court is unimpressed with plaintiffs'
Lanham Act claims given the dearth of evidence that defendants used the mark INFOUSA or the name
Infogroup in the websites at issue.  The reference to INFOUSA in the e-mail from Gunter to Skradski's

21

alias is at best ambiguous; it could be viewed as providing a recommendation responsive to Skradski's
inquiry about her "best option" for the sought-after data or as merely a label for the YouTube video link,

22

thus falling within the category of nominative fair use.

23

ORDER AND PRELIMINARY INJUNCTION - 8

1    In their motion, plaintiffs rely on RCW 6.25.030(9) and contend that Span has

2  committed the felony of theft.  Plaintiffs, however, provide no proof concerning how

3  Span came into possession of their database.[5]  In contrast, Span indicates that he might

4  have acquired the database from a third party.  *See* *supra* note 3.  The terms under which

5  Span might have obtained the database, *i.e.*, whether he paid for it, and if so, how much,

6  and whether Span knew or should have known that the database was stolen remain

7  unclear.  Regardless, possession of a stolen item, with or without knowledge of its status,

8  does not amount to theft, and possession of a stolen item without knowledge of its status

9  does not amount to a crime.  *See* RCW 9A.56.020 (defining theft and defenses);

10  RCW 9A.56.140 (defining "possessing stolen property").  Thus, plaintiffs have not

11  demonstrated probable cause to believe that the "commission of a felony" basis for a writ

12  of attachment exists.

13  **Conclusion**

14    For the foregoing reasons, plaintiffs' motion for a preliminary injunction and writ

15  of attachment, docket no. 5, is GRANTED in part and DENIED in part.  Defendants

16  William Span, Michael Gunter, and LeadProducers LLC, together with their members,

17  managers, officers, agents, and employees are hereby ENJOINED, pending further order,

18  from accessing, marketing, or selling plaintiffs' business database, and from operating the

19

20  [5] As a result, the Court also has doubts about the viability of plaintiffs' claims of conversion, trespass to
21  chattels, and violation of the Computer Fraud and Abuse Act.  *See* *Power Equip. Maint., Inc. v. AIRCO
Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1295 (S.D. Ga. 2013) (observing that intentional unauthorized
22  access, within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C), is narrowly
construed).

23

ORDER AND PRELIMINARY INJUNCTION - 9

website secretsalesformula.com.  This injunction shall also be binding on all persons in

active concert or participation with defendants who have received actual notice by

personal service of this Order and Preliminary Injunction.  The Court concludes that no

bond is required because defendants are unlikely to be harmed as a result of the

preliminary injunction.  *See* *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321

F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting

the amount of the bond, and the bond amount may be zero if there is no evidence the

party will suffer damages from the injunction." (citations omitted)).  A writ of attachment

will not be issued.

IT IS SO ORDERED.

The Clerk is DIRECTED to send a copy of this Order and Preliminary Injunction

to all counsel of record.

Dated this 28th day of May, 2014.

Thomas S. Zilly
United States District Judge